1                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MISSISSIPPI
2


3
UNITED STATES OF AMERICA        .        Cause No. 1:08CR03
4                                .
           Plaintiff            .        Oxford, Mississippi
5                                .        December 16, 2008
           v.                   .        10:00 a.m.
6                                .
JOSEPH CASH LANGSTON            .
7                                .
           Defendant            .
8 . . . . . . . . . . . . . . . .


9


10        SENTENCING AS TO COUNT 1 OF THE INFORMATION
              BEFORE THE HONORABLE MICHAEL P. MILLS
11                 U.S. CHIEF DISTRICT JUDGE


12


13
APPEARANCES:
14


15 For the Government:      United States Attorney's Office
                           Northern District of Mississippi
16                          BY:  ROBERT NORMAN, ESQ.
                           BY:  THOMAS DAWSON, ESQ.
17                          900 Jefferson Avenue
                           Oxford, Mississippi  38655-3608
18
For the Defendant:         TONY FARESE, ESQ.
19                          STEVEN E. FARESE, SR., ESQ.
                           Farese, Farese & Farese
20                          122 Church Street
                           Post Office Box 98
21                          Ashland, Mississippi 38603-0098

22 Court Reporter:          Rita Davis Sisk, FCRR, RPR
                           911 Jackson Avenue, Room 369
23                          Oxford, Mississippi  38865
                           (662) 416-2038
24
Proceedings recorded by mechanical stenography, transcript
25 produced by computer.

1    (CALL TO ORDER OF THE COURT)

2    **THE COURT:** Madam Clerk, would you call the docket,

3 please.

4    **THE COURTROOM DEPUTY:** Court calls Cause No.

5 1:08cr03, *United States of America vs. Joseph C. Langston.*

6 This is a sentencing as to Count 1 of the information.

7    **THE COURT:** All right. Who speaks for the

8 Government?

9    **MR. DAWSON:** I do, Your Honor.

10    **THE COURT:** And what is your name?

11    **MR. DAWSON:** Tom Dawson.

12    **THE COURT:** And who do you have with you?

13    **MR. DAWSON:** I have Robert Norman, Assistant United

14 States Attorney, and John Alexander, our chief of the criminal

15 division.

16    **THE COURT:** All right. And who speaks for the

17 defendant?

18    **MR. TONY FARESE:** Tony Farese and Steve Farese from

19 Ashland, Your Honor.

20    **THE COURT:** All right. And are you ready for the

21 sentencing of your client?

22    **MR. TONY FARESE:** We are, Your Honor.

23    **THE COURT:** Before we begin, are there any unresolved

24 objections to the presentence report?

25    **MR. TONY FARESE:** No, sir, not on behalf of the

1  defendant, Your Honor.

2        **THE COURT:**  All right.  If you're ready to proceed,

3  you may come forward.

4     (Parties complying.)

5        **THE COURT:**  All right, Mr. Langston, on a previous

6  day, you entered a plea of guilty to Count 1 of an information

7  which charged conspiracy to corruptly influence an elected

8  state official.  And you are now before the Court for

9  sentencing.

10     Have you reviewed the presentence report with your client?

11        **MR. TONY FARESE:**  I have, Your Honor.

12        **THE COURT:**  And you have no objections?

13        **MR. TONY FARESE:**  We have no objections, Your Honor.

14        **THE COURT:**  Does the Government have any objections?

15        **MR. DAWSON:**  We do not, Your Honor.

16        **THE COURT:**  All right.  Before your sentencing,

17  Mr. Langston, is there anything you would like to say?

18        **THE DEFENDANT:**  I would, Your Honor.  If it please

19  the Court, Your Honor, I've said -- over the last 11 months and

20  nine days -- I'm sorry to so many deserving people in so many

21  different ways; but I don't think I've ever been able to find

22  the words to really communicate how sorry I am for my role in

23  this.

24     I said I was embarrassed and ashamed, and indeed I am.

25  But the most horrible part of all of it is not the pain and the

1  loss that I've caused myself, although great, it's the pain and

2  suffering that I've caused the people around me, my family and

3  my friends, my colleagues, who didn't deserve any of it.

4      I really struggle, Judge Mills, with what I've done. I've

5  looked at it every way I know how, spiritually, emotionally.

6  I've literally read volumes on how people handle a fall from

7  grace. But there's only one way that I could figure it out.

8  And that's -- and I hope my sons learn from me -- is to accept

9  responsibility for what I've done, to be honest about it, as

10 embarrassing as it may be, to try to identify those that I've

11 hurt with my senseless act and try to make it, as well as I

12 can, right by them.

13     It's been frustrating. Because this was not a tragedy of

14 chance or a tragedy of nature. It was a man-made tragedy. And

15 I had a role in it. And it -- it changed the life of the

16 people around me forever. I just can't imagine the sadness

17 ever going away.

18     But I broke one of my own rules. For 25 years, I

19 practiced law. And I told all sorts of fine young lawyers that

20 came through my office, "There is no client, there is no case

21 worth placing your bar license at risk, much less your

22 credibility and your honor." But I did that. I placed it at

23 risk. I can't believe I did it. But I did it.

24     I don't even know what to ask of anybody, of the Court or

25 anybody else, grace, compassion, forgiveness. Perhaps I'm

1   entitled to none of it.  But I think you'll know.  It's been a

2   nightmare.  And I just can't wake up from it.  But I'm so

3   sorry.  If the good Lord will give me some time, I'll do right

4   by others; I'll try very hard to.  I'm sorry, Judge.

5            **THE COURT:**  All right.  Thank you.

6        Mr. Farese, did you have anything to say?

7            **MR. TONY FARESE:**  Yes, sir.  Your Honor, this is the

8   saddest day in my legal career, to stand beside my friend, Joey

9   Langston.  I've handled a lot of cases in 23 years, but this is

10  the saddest one.  I've known Joey for about 24 years, and I

11  knew his father, Joe Ray Langston.  There wasn't a nicer guy in

12  the world than Mr. Joe Ray.  He was a respected lawyer in his

13  own right.

14       Joey chose, when he got out of law school, to go home and

15  practice law with him in his hometown in Booneville.  And in

16  1986, when Mr. Joe Ray was 53 years of age, after a heart

17  transplant, he died and left Joey, at 29 years of age, at the

18  helm of that law firm.  With the stress of the loss of his

19  father and the stress of taking over that firm, Joey became a

20  diabetic at the age of 29.

21       That's the Joey Langston I've known all these years, who

22  worked very hard, worked 12 to 14 hours a day to build a

23  thriving, successful trial practice in Booneville, who played

24  by the rules and became one of the most successful trial

25  lawyers I've had the pleasure of knowing.

1     During that entire time, he was married to his wonderful

2 wife, Tracey; and the Lord blessed them with three wonderful

3 boys. After his father's death, his mother became disabled.

4 Joey accepted the responsibility of supporting her and an aunt

5 as well. He always put family first.

6     And I know the Court wonders how could such a man be

7 before you today. I don't know the answer to that. All I know

8 is that he made the most horrible, most tragic mistake that a

9 lawyer can make. And it's cost him everything. It's cost him

10 his law license; it's cost him his practice. And most

11 importantly, it's cost him his honor.

12     The only explanation I can give the Court is that he got

13 lost for a brief period of time. He strayed from his core

14 values. There's no excuse for it. And Joey's made no excuse,

15 Your Honor.

16     The Government confronted him in January of this year.

17 And when he was confronted, he chose to admit his guilt and

18 enter a guilty plea. He didn't avail himself of his

19 constitutional rights and place the Government at task to make

20 them prove his guilt. He admitted his guilt and made no

21 excuses.

22     But on the same day that he appeared in your chambers, on

23 January 7th, and entered his plea, he began his cooperation

24 within the hour. The full extent of his cooperation is

25 outlined in the Government's 5K1.1 motion for a downward

1  departure, and I've never seen a stronger motion filed in my
2  23 years of practice.  He's fully cooperated.  The Government,
3  in that document, says that his cooperation exceeded their
4  expectations.
5      I believe it produced guilty pleas in the first Scruggs
6  matter.  Joey's worked numerous hours with DOJ lawyers,
7  Assistant U.S. Attorneys, with FBI agents.  He's testified to
8  the grand jury.
9      Some defendants you see are remorseful; very few you see,
10  I believe, are repentant.  I believe Joey Langston is
11  repentant.  He's experienced sorrow, regret, shame.  And I've
12  seen it manifest itself physically in him.
13      I've spent countless hours with him since January of this
14  year.  And what I've had to witness has been terrible.  It's
15  actually been terrible.  The burden of his own conduct has
16  almost been too much, I thought, for him to bear at times.  I
17  can honestly tell the Court I've never seen anyone more
18  contrite and more remorseful than Joey.
19      He made his wrong right by settling with Mr. Wilson.  He
20  settled that civil claim.  There's a clause there that does not
21  allow us to reveal how much that was settled for, but it was
22  substantial.  I think that proves that he was more than
23  remorseful; he was repentant.
24      Judge, you've had the opportunity to read the 344 letters
25  that were written on his behalf.  What a wonderful testament to

1 the good things he's done. You've seen the countless comments

2 by people who love him from all walks of life who've seen his

3 acts of benevolence, who've seen his anonymous gifts, the pain

4 of funerals. Those show the Joey Langston I know, Your Honor.

5     This has had a detrimental effect on his health. I was in

6 Corinth, Mississippi, when Joey had a heart cath. We learned

7 from Dr. Patterson that he had, in fact, had a heart attack.

8 He's got two blockages. He suffers from coronary artery

9 disease, and he's also insulin dependent.

10     I know this Court is burdened with what's the appropriate

11 punishment for a crime of this nature. And it's a very, very

12 serious crime. I ask the Court to look to the 3553 factors in

13 Title 18, look at the history and character of the defendant;

14 look at his community ties and his good works, the assistance

15 he's given to his mother and his aunt, the assistance he's

16 given to other family members. I believe he's given

17 extraordinary acceptance of responsibility as is evidenced by

18 the Government's 5K motion.

19     The seriousness of the offense and the respect for the law

20 and just punishment must be considered under 3553(a)(2)(A). I

21 think the Government's 36-month cap recognizes the upper range

22 of the offense is serious. There was no statutory mandatory

23 minimum in this offense.

24     And we've had additional punishment, Your Honor, the loss

25 of his law license forever. And I do believe -- and I will

1  suggest to the Court -- that the length of delay in his

2  sentencing that's allowed him to continue to cooperate with the

3  Government has been detrimental mentally and emotionally on his

4  health.

5          Under 3553(a)(2)(B)(c), they look at adequate deterrence

6  and protection of the public.  There's been a long history of

7  crime-free conduct in Joey's life.  There was no move by the

8  Government to incarcerate him pending sentencing.

9          And then, Your Honor, the guidelines, policy statements,

10  and commission research as articulated in 3553(a)(4)(A) and

11  then (5)(A).

12          I'm not going to be presumptuous enough to tell the Court

13  what it should do in sentencing.  Joey's my friend.  I pray for

14  leniency on his behalf.  I don't know of anything more that a

15  man could do to right the wrong that he has committed than Joey

16  Langston has done in this matter.

17          I sincerely believe that he's repentant; that he's

18  genuinely sorry; and that there's been a change in him.  The

19  only good thing that can come out of this, Your Honor, is the

20  lesson that he's been able to teach his children out of this.

21          And I've been there when those discussions have occurred.

22  They've been some of the toughest discussions that you'd have

23  to witness.  I ask the Court for leniency.  I ask the Court to

24  greatly consider the words in the 5K1.1 motion.  Thank you.

25          **THE COURT:**  Thank you.

1     Does the Government have anything to say?

2        **MR. DAWSON:**  Just briefly, Your Honor.  We have filed

3  a motion for downward departure pursuant to the terms of the

4  plea agreement and under Section 5K1.1 of the sentencing

5  guidelines.  That motion is detailed and comprehensive.  I

6  would like to expand on two points if the Court please.

7        Late in December of 2007, the United States Attorney's

8  Office was in the pretrial stages of what has become known as

9  Scruggs I.  The evidence in that case was extremely strong.

10  But there has been no case that I've ever seen that could not

11  have been enhanced or made stronger.

12        Faced with the developing evidence of his own involvement

13  in what would become the 404(b) evidence in Scruggs I,

14  Mr. Langston, at our invitation, decided to do the right thing

15  and plead guilty to conspiracy to corruptly influence the

16  judicial process, cooperate and testify against the defendants

17  in what would become known as Scruggs II.

18        To say that this added evidentiary weight to the original

19  case would be a tremendous understatement.  Similarly, it was a

20  capstone of that case.  To put it in some perspective, one day

21  Mr. Langston was part of the Scruggs defense team as an

22  attorney; the next day, he was a convicted felon and a

23  Government witness against Mr. Scruggs.  No one can be certain

24  as to the impact of that, but we believe that Mr. Langston's

25  decision to plead and cooperate was a significant factor in the

1   resolution of Scruggs I.

2       Now, the second point is a little less obvious.  Again,

3   referring to January of '08, the United States Attorney's

4   Office was faced with the monumental task of litigating Scruggs

5   I.  By some reports, the lawyers and paralegals representing

6   the Scruggs defendants were numbering between 17 and 20.  We

7   had three attorneys prosecuting the case.

8       When Mr. Langston was confronted, he did not choose the

9   usual route of most white-collar defendants and certainly

10  white-collar defendants that were also lawyers.  Mr. Langston

11  realized what he had done, desired to make it right, regardless

12  of the cost.

13      Now, what this had as a practical effect, it avoided the

14  Government having to launch a parallel investigation into

15  Scruggs II.  There was substantial savings in resources,

16  manpower, both in the investigating stage and what would have

17  been the prosecutorial stage.  So substantial assistance was

18  rendered by Mr. Langston, not only in the evidence provided in

19  various cases but in the saving of time, resources, and

20  manpower that was indeed substantial.

21      We have no doubt that Mr. Langston will continue the

22  cooperation that he has begun and effected quite -- I think as

23  one of the agents said -- exceedingly.  And probably more than

24  he'd ever seen in his career.  We'd ask the Court to accept the

25  plea agreement and favorably consider the 5K1.1 motion which

1  has been filed.  Thank you.

2          **THE COURT:**  All right.  Thank you.

3      Well, I'm about to state the reasons for your sentence,

4  Mr. Langston.  There being no objections, I will adopt the

5  presentence report without change.  And I find in this case

6  that no count of conviction carries a mandatory minimum

7  sentence.

8      If I went under the statute, you could receive not more

9  than five years imprisonment, not more than three years

10 supervised release, not more than a $250,000 fine; and a $100

11 special assessment.

12     Under the guidelines, you have a total offense level of

13 27, a criminal history category of Roman Numeral I, and the

14 guidelines provide for an imprisonment range of up to

15 60 months.  The guidelines, of course, cannot be longer than

16 the statute.  The supervised release range under the guidelines

17 is 2 to 3 years with a fine of $12,500 up to $125,000.

18     The sentence to be imposed will be below the advisory

19 guideline range.  And that's because of the binding plea

20 agreement for a sentence outside that range has been accepted

21 by the Court.  You entered into what is known as an 11(c)(1)(C)

22 binding plea agreement in this case for a sentence of

23 imprisonment not to exceed three years.  I have accepted that

24 agreement.  And I find in this case that restitution is not

25 applicable.

1       In this case, the Government has also filed a motion for

2  downward departure based upon your substantial assistance.  And

3  I have considered the statements that you have made and that

4  your attorney has made, that the Government has made, and the

5  many letters written on your behalf.  And I've given a great

6  deal of thought to this case.

7       It's -- for the lawyers in the Northern District of

8  Mississippi and the Court, it's a very personal matter, because

9  you are an attorney of long standing in the northern district.

10 The young lawyers who wrote letters, and who Mr. Farese

11 referred to on your behalf, who have come through your firm are

12 outstanding young lawyers; and they are people of credibility.

13      It's also true to say that, of the attorneys who have

14 tried cases in this Court, you have as much talent as any

15 attorney that I have seen.  You're an outstanding litigator.

16 And that does add the tragedy and shame to it, because with

17 those talents came a duty to truthfully, honorably, faithfully

18 represent your clients, not for your interests but theirs.  And

19 that talent has been taken away.

20      I've thought about the purpose of a sentence in this case.

21 One, a deterrence.  As Mr. Farese mentioned, that's one of the

22 3553 factors.  I suspect from the lawyers that I know, the

23 lawyers -- the small town lawyers, people trying to make a

24 living, closing loans, writing wills, taking care of the people

25 in their community, that they don't need deterring.  Most of

1  them, it would be absolutely unthinkable.  So I don't know the

2  effect of deterrence in this case.  It may deter those who need

3  some new boundaries to follow.

4       There's the issue of the Rule of Law, and that's what

5  we're really talking about here today, I think.  The Rule of

6  Law is so important in a civilized society.  Men and women from

7  America are dying today in at least two wars to preserve,

8  ultimately, what's the Rule of Law.

9       It's the Rule of Law that gives us the lifestyles that we

10  have.  It gives us opportunity.  It gives a reason for the

11  people who get up and go to work every day to get up and go to

12  work, because they believe that the people who are making

13  decisions, the people who have positions of trust, will not

14  violate that Rule of Law.

15       And the damage that you have done to the Rule of Law is

16  probably the real tragedy in this case.  And it's something

17  that I also have to consider the effect of on the judicial

18  system, the Rule of Law, the things we believe in.  Your

19  actions threaten the integrity of the judicial system.

20       And the plea agreement cap of 36 months was based your

21  assurance to the U.S. Attorneys that you would fully cooperate.

22  The filing of the 5K1.1 motion verifies to this Court that you

23  have honored that agreement.  So the recommended sentence of

24  36 months is appropriate in this case.

25       This will be your sentence:  Pursuant to the Sentencing

1  Reform Act of 1984, as modified by *U.S. v. Booker*, it is the

2  judgment of the Court that the defendant, Joseph C. Langston,

3  is hereby committed to the custody of the Bureau of Prisons to

4  be imprisoned for a term of 36 months on Count 1 of the

5  information.  Upon release from imprisonment, the defendant

6  shall be placed on supervised release for a term of three years

7  on Count 1 of the information.

8       The defendant shall comply with the following mandatory

9  conditions:  The mandatory drug testing condition is suspended

10 based on the Court's determination this defendant poses a low

11 risk of future substance abuse.  The defendant shall not

12 possess a firearm, ammunition, destructive device, or any other

13 dangerous weapon.  The defendant shall cooperate in the

14 collection of DNA as directed by the probation officer.

15      In this case, because of the financial gain to this

16 defendant, I think there is a need to reflect the seriousness

17 of the offense as to a fine.  So the Court will upwardly depart

18 and order the defendant to pay a fine of $250,000 to the U.S.

19 District Court Clerk's Office, Northern District of

20 Mississippi, under Count 1 of the information.  A lump sum

21 payment of $250,000 is due immediately but, in no event, to be

22 paid in full not later than January the 16th, 2009.

23      It is ordered that the defendant shall pay to the United

24 States District Court Clerk's Office, Northern District of

25 Mississippi, a special assessment of $100 for each count of

1   conviction for a total of $100 which is due immediately.

2      You have the right to appeal any sentence imposed

3   illegally or as a result of a miscalculation of the guidelines

4   or outside the guideline range or one that is plainly

5   unreasonable.  If you're unable to pay for the cost of an

6   appeal, you may request the Court to waive such cost and/or

7   appoint you an attorney.

8      Mr. Langston, do you understand the sentence that I just

9   stated?

10         **THE DEFENDANT:**  Yes, sir.

11         **THE COURT:**  All right.  Do you wish to remain out on

12   bond?

13         **MR. TONY FARESE:**  Yes, sir.

14         **THE COURT:**  We're going to designate -- we will have

15   an institution designated for your service, and I'm going to

16   let you get there on your own.  I'm going to designate

17   Thursday, January the 15th, 2009, before 2 p.m.  as the date

18   and time for you to report.

19      And so that we have a record, I'll ask you to sign a

20   voluntary surrender form; and I'll ask your attorney to witness

21   it.

22         **MR. TONY FARESE:**  Your Honor, could we make a

23   request?  We would request that the Court consider recommending

24   Montgomery for him.  We've done some research -- and he's

25   insulin dependent -- and we think that defendants are allowed

1 needles for insulin in Montgomery.  They are not in some other

2 places, as we understand it.  It's my understanding that he

3 takes up to four shots a day.

4      (Parties complying.)

5           **THE COURT:**  We'll put in there a request that his

6 medical conditions be taken into consideration and make note of

7 that.

8           **MR. TONY FARESE:**  Thank you, sir.

9           **THE COURT:**  All right.  Anything else?

10          **MR. DAWSON:**  Not on behalf of the Government, Your

11 Honor.

12          **THE COURT:**  All right, Mr. Langston, you'll be

13 notified by the Clerk of the Court as for the place to you

14 report; and I'm going to leave it up to you to get there.  I

15 wish you the best of luck, and you're now excused.  Court will

16 be in recess.

17          (THE SENTENCING HEARING ENDED AT 10:33 a.m.)

18

                    C E R T I F I C A T I O N

19

20     "I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter,
December 16th, 2008."

21                         /s/ Rita Davis Sisk_____
                           RITA DAVIS SISK, RPR, BCR, CSR #1626

22                         Official Court Reporter

23

24

25