IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOSEPH C. LANGSTON                                                        MOVANT

v.                                                                No. 1:08CR3-MPM-DAS

UNITED STATES OF AMERICA                                                  RESPONDENT


## MEMORANDUM OPINION

This matter comes before the court on the application of Joseph C. Langston for a writ of error

*coram nobis* seeking to vacate his conviction for conspiracy to defraud the United States by

influencing a government official under 18 U.S.C. §§ 371 and 666. The government has responded to

the motion, Langston has replied, and the matter is ripe for resolution. For the reasons set forth below,

the instant motion to vacate, set aside, or correct sentence will be denied.

### Facts and Procedural Posture

Joseph C. "Joey" Langston entered a plea of guilty before the United States District Court for

the Northern District of Mississippi on January 7, 2008. In the plea, Langston admitted that, from "on

or about January of 2006 and continuing until on or about March of 2007" he and his co-conspirators

had corruptly offered a thing of value (recommendation for appointment as Federal District Judge) to

Circuit Judge Robert "Bobby" Delaughter in an attempt to influence him as an agent of state or local

government. The court entered judgment on December 16, 2008, and sentenced Langston to three

years in the custody of the United States Bureau of Prisons. He did not appeal, and the deadline to do

so expired on December 26, 2008, 10 days after entry of judgment.  Fed. R. App. P. 4(b)(1)(A)(i).[1]

During Langston's incarceration, the Fifth Circuit Court of Appeals decided *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009), holding that even if the state court judges who were bribed in that case were agents of the Administrative Office of Courts ("AO"), their corrupt judicial decisions were not made in connection with the business of the AO.  For that reason the $10,000 federal funds received by the AO did not provide the statutory jurisdictional basis for prosecution under 18 U.S.C. § 666.  The Fifth Circuit rendered the *Whitfield* decision on December 11, 2009.  Langston did not request that the court vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, and the deadline to do so expired on December 26, 2009, one year after the deadline to appeal his conviction.  *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002).   Langston was released from incarceration and placed on supervised release on April 18, 2011.  Using March 31, 2007, as the latest date that the judicial bribery of Judge Delaughter occurred (as set forth in the Information), the 5-year limitations period applicable to that crime expired on March 31, 2012.  Langston's period of supervised release ended April 17, 2014, and he filed the instant petition seeking a writ of error *coram nobis* on April 15, 2015.  The government responded to the motion on June 26, 2015, and Langston replied on July 13, 2015.

### *Coram Nobis* Relief [2]

The term *coram nobis*, a vehicle to mount a post-conviction collateral challenge to a judgment, is of Latin origin, and literally means "in our presence" or "before us."  *Black's Law Dictionary*, 304-305 (5th ed. 1979).  The "us" in the translation refers to the court which rendered the

---

[1] Though the current rule establishes a 14-day deadline for filing of Notice of Appeal, the previous version, which was amended in 2009, set the deadline for seeking an appeal of a criminal judgment at 10 days.  Fed. R. App. P. 4, Advisory Committee Notes.

[2] The court obtained the bulk of the information and authority for this discussion of *coram nobis* relief from the *Federal Postconviction Remedies and Relief Handbook* § 2:20 (Donald E. Wilkes, Jr.), an invaluable resource for studying this seldom-used vehicle for post-conviction relief.

challenged judgment.  *Id.*  The purpose of the writ is to present to the court – and obtain relief from:

> errors of fact, such as a valid defense existing in the facts of [the] case, but which, without negligence on [the] defendant's part, was not made, either through duress or fraud or excusable mistake, where [the] facts did not appear on [the] face of [the] record, and were such as, if known in season, would have prevented rendition of the judgment.

*Id.*  The All Writs Act, 28 U.S.C. § 1651, authorizes federal *coram nobis* relief, an extraordinary postconviction remedy for those convicted in a federal district court or a federal military tribunal.

*Federal Postconviction Remedies and Relief Handbook* § 2:20 (Donald E. Wilkes, Jr.)  *Coram nobis* applies only to federal convictions – and may not be used to challenge convictions in state court.

*United States v. Poole*, 531 F.3d 263 (4th Cir. 2008); *Ogunwomoju v. United States*, 512 F.3d 69 (2d Cir. 2008) (a federal district court has no jurisdiction to issue writs of error *coram nobis* to set aside a state court judgment).  A defendant seeking *coram nobis* must do so by filing the petition in the convicting court as part of the original criminal proceeding.[3]

The federal *coram nobis* remedy "is of the same general character as one under 28 U.S.C. § 2255" with substantially the same grounds for relief – the ground for relief must involve fundamental error, whether jurisdictional, constitutional, or otherwise.  *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247 (1954).  A *coram nobis* proceeding under 28 U.S.C.A. § 1651 is not a civil action; it is, instead, a post-sentencing phase of the original criminal prosecution giving rise to the challenged conviction.  *United States v. Denedo*, 129 S. Ct. 2213, 2221, 173 L. Ed. 2d 1235 (2009); *United States v. Morgan*, 346 U.S. 502, 506 n.4, 74 S. Ct. 247, 98 L. Ed. 248 (1954).  The convicted defendant need not be in custody when seeking federal *coram nobis* relief.  *Barreto-Barreto v. United States*, 551 F.3d 95 (1st Cir. 2008).  In fact, as *coram nobis* relief is barred when another remedy is available, a defendant in custody through a federal conviction must proceed under 28 U.S.C.A. § 2255, rather than

---

[3] In cases involving a conviction in a military tribunal, however, the application for *coram nobis* relief must be filed, not in the convicting court, but in the appellate military tribunal.

28 U.S.C.A. § 1651.  *Jimenez v. Trominski*, 91 F.3d 767 (5th Cir. 1996), *United States v. Marcello*, 876 F.2d 1147 (5th Cir. 1989).  For this reason, defendants convicted in federal district court seeking relief under § 1651 are almost exclusively those who received a sentence not involving incarceration – or who have been sentenced to a term in prison but have completed it.  Thus, *coram nobis* relief is substantially equivalent to that under 28 U.S.C. § 2255, but without a custody requirement.  *Federal Postconviction Remedies and Relief Handbook* § 2:20 (Donald E. Wilkes, Jr.)

However, unlike a Section 2255 proceeding, in a federal *coram nobis* proceeding, the person receiving relief must not only show that the conviction or sentence is invalid, he must also prove he is suffering adverse collateral consequences resulting from the conviction.  *United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247, 98 L. Ed. 248 (1954).  Examples of adverse collateral consequences include: receiving recidivist punishment arising out of a subsequent conviction, threat of deportation, or suffering a loss of civil rights.  *Postconviction Remedies and Relief Handbook, supra*.  Rule 60(b) of the Federal Rules of Civil Procedure does away with the writ of error *coram nobis* only with respect to attacks on federal *civil* judgments; it does not affect the availability of *coram nobis* to attack federal *criminal* judgments.  *Id.*

Only two U.S. Supreme Court decisions involve federal *coram nobis* post-conviction relief:  *United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247, 98 L. Ed. 248 (1954), and *United States v. Denedo*, 129 S. Ct. 2213, 173 L. Ed. 2d 1235 (2009).  Thus, the lower federal courts have been left to define the contours of *coram nobis* relief.  The various federal courts of appeals have rendered conflicting opinions as to the requirements for obtaining *coram nobis* relief; as such, its methods of application vary among the circuits.  *Postconviction Remedies and Relief Handbook, supra*.  However, the remedy is generally available to a defendant if:  (1) the ground for relief involves fundamental error; (2) no other judicial remedy, such as relief under 28 U.S.C. § 2255, is currently available; (3) the defendant can show valid reasons for failing to seek relief earlier; and (4) as a result of the conviction,

the convicted person is suffering or threatened with adverse collateral consequences. *Id*. The requirement regarding adverse collateral consequences when seeking *coram nobis* relief cannot be satisfied merely because the defendant, as a result of the conviction, (1) suffers damage to his reputation, (2) experiences difficulty acquiring or keeping a job, (3) suffers monetary loss, or (4) suffers spiritually. *Id*. Those convicted of misdemeanors may also seek *coram nobis* relief. *United States v. Walgren*, 885 F.2d 1417 (9th Cir. 1989); *Hirabayashi v. United States*, 828 F.2d 591 (9th Cir. 1987).

Should the defendant prevail in a *coram nobis* proceeding, the court usually provides relief in the form of the vacatur and setting aside of the invalid conviction. *Allen v. United States*, 867 F.2d 969 (6th Cir. 1989). Courts have also provided relief by requiring reimbursement of restitution paid by the defendant. *United States v. Mischler*, 787 F.2d 240 (7th Cir. 1986). The court may also order repayment of a fine exacted as a result of the invalidated conviction. *See, e.g., United States v. Mandel*, 862 F.2d 1067 (4th Cir. 1988). The defendant may appeal an adverse ruling on a petition for a writ of error *coram nobis*, as may the government. *Howard v. United States*, 962 F.2d 651 (7th Cir. 1992) (defendant may appeal), *Nicks v. United States*, 955 F.2d 161 (2d Cir. 1992) (government may appeal).

Even if a defendant meets the criteria for *coram nobis* relief, that remedy may be precluded by the ancient equitable doctrine of laches. *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996). If a defendant unduly delays the challenge to his conviction, then he waives the opportunity to do so:

> We believe that the doctrine of laches should apply to *coram nobis* proceedings because otherwise, there would be essentially no time limits for bringing *coram nobis* claims. Moreover, sound policy dictates that *coram nobis* claims be brought as early as possible to prevent the suffering imposed by illegal convictions and to prevent the government from being prejudiced in its efforts to re-prosecute meritorious cases.

*Blanton*, p. 231. [4]  In *Blanton*, the Sixth Circuit held that a three-year delay in seeking *coram nobis* relief was not "unduly long" because it was "a reasonable amount of time" to obtain new counsel and file suit.

In addition, a petitioner seeking *coram nobis* relief must show that he sought all remedies available to him while he was incarcerated:

> A writ of *coram nobis* "will issue only when no other remedy is available and when sound reasons exist[ ] for failure to seek appropriate earlier relief.'" [*United States v. Dyer*, 136 F.3d 417, 422 (5th Cir.1998)].  (quoting [*United States v. Morgan*, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954)]).

*United States v. Esogbue*, 357 F.3d 532, 535 (5th Cir. 2004).  In *Esogbue*, the petitioner was convicted of conspiracy to defraud the United States through wire fraud.  *Id.* at 533.  While incarcerated, he then pursued post-conviction collateral relief under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence.  *Id.*  That petition was denied, and Esogbue was eventually released from incarceration and completed his period of post-release supervision.  *Id.*  He then filed a petition for writ of *coram nobis* under 28 U.S.C. § 1651, apparently asserting new grounds for relief.  *Id.*  After the District Court, without explanation, dismissed the petition for want of jurisdiction, Esogbue appealed, and the Fifth Circuit vacated and remanded the case.  *Id.* at 533.  The Fifth Circuit, without reaching the merits of Esogbue's petition, held that, prior to his release from incarceration, the remedy of a successive motion under 28 U.S.C. § 2255 setting forth the new grounds for relief had been available to him.  *Id.* at 535.  The Fifth Circuit then instructed the District Court, on remand, to determine whether Esogbue had a "sound reason" for failure to seek § 2255 relief before filing his *coram nobis* petition.  *Id.*  In the absence of such a reason, Esogbue would be unable to show that his conviction was a "complete miscarriage of justice" warranting *coram nobis* relief.  *Id.*

---

[4] The Sixth Circuit noted in Blanton that the First, Second and Seventh Circuits have indicated they would bar *coram nobis* relief if a petitioner delayed too long in bringing his claim.  *Blanton*, p. 231.

**Summary of the Parties' Arguments
and the Court's Disposition of Them**

Mr. Langston offers several arguments in favor of *coram nobis* relief. Looking to the elements of *coram nobis* relief, he makes the following arguments: (1) that the ground for relief (want of subject matter jurisdiction) rises to the level of fundamental error, (2) that no other remedy, such as relief under 28 U.S.C. § 2255, is currently available to him, (3) that he can show valid reason for failing to seek relief on this ground earlier (namely, the Fifth Circuit's holding in *Whitfield* occurring near the end of the § 2255 deadline), and that (4) as a result of the conviction, he is suffering adverse collateral consequences (inability to vote, inability to possess a firearm, etc.) Langston also argues that, because the error, if proved, is based upon want of subject matter jurisdiction (which is not subject to the doctrines of waiver or estoppel), there is no time limit for seeking *coram nobis* relief to correct it.

The government counters with several arguments. First, the government argues that the ancient equitable doctrine of laches bars *coram nobis* relief in the present case because Langston did not seek relief on subject matter jurisdiction grounds earlier in the proceedings through a petition for a writ of *habeas corpus* under 28 U.S.C. § 2255. The government then bolsters that argument, noting that Mr. Langston waited to mount his challenge until after the statute of limitations had run on all crimes for which he could have been charged based upon his involvement in the bribery scheme. Further, the government argues that Langston has misapplied the Fifth Circuit's holding in *Whitfield* – that Langston's interpretation would leave all state judicial bribery schemes beyond the scope of any federal criminal statute, including honest services fraud under 18 U.S.C. § 1346, as well as 18 U.S.C. § 666. Finally, the government seems to argue that any indictment, information, or plea – as long as it follows the language of a valid criminal statute – permanently confers the court with subject matter jurisdiction – even if the allegations fail to charge a crime against the United States.

Mr. Langston has established two of the four grounds for *coram nobis* relief:  that he has no other remedy available to him, and that he is suffering adverse collateral consequences because of his conviction.  He has not, however, proved the remaining elements:  that his ground for relief involves fundamental error – or a that a valid reason exists for his failure to seek relief for the alleged error earlier in the proceedings.  Langston is correct that, *if* he could show that the court lacked subject matter jurisdiction, then he could show violation of a fundamental right, but he has *not* proved want of subject matter jurisdiction, and, under the doctrine of *res judicata*, he may not do so now.  It is not clear that the doctrine of laches, on its own, would bar a challenge to subject matter jurisdiction in a *coram nobis* proceeding; however, it appears that an element of *coram nobis*, itself, contain a laches provision (failure to seek relief in earlier proceedings).  In any event, through either laches or the elements of *coram nobis* relief, Langston has waited too long to raise a jurisdictional challenge – and has not provided a valid reason for failing to seek relief under 28 U.S.C. § 2255 in earlier proceedings.

### Laches Bars Langston's Petition for a Writ of Error *Coram Nobis*

In this case, Langston cannot avail himself of the remedy of a writ of error *coram nobis* because he failed to move first under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  After Langston's guilty plea, the court entered judgment on December 16, 2008, and that judgment became final ten days later, December 26, 2008, when the deadline for direct appeal expired.  Section 2255 has a one-year limitations period from the date a conviction becomes final; as such, Langston's deadline to seek *habeas corpus* relief under 28 U.S.C. § 2255 expired one year later – on December 28, 2009.[5]  The Fifth Circuit issued its decision in *Whitfield* on December 11, 2009, only 17 days before Langston's one-year deadline expired.  This gives rise to two scenarios, neither of which

_____

[5] December 26, 2009, fell on a Saturday; as such, the deadline expired on the next business day, Monday, December 28, 2009.  Rule 6, Fed. R. Civ. P.

relieves Langston of his obligation to diligently pursue every remedy available before seeking *coram nobis* relief. First, if he had discovered the *Whitfield* decision within those 17 days, he could have filed a skeletal § 2255 motion roughly outlining his claims to preserve them before the limitations period ran. He could then have amended the petition after sufficient time to brief it in full.[6] Second, as Langston discovered the *Whitfield* decision *after* the expiration of the limitations period, then he could have, as expeditiously as possible, sought § 2255 relief and moved the court to apply equitable tolling (based upon the brief period between the decision in *Whitfield* and the § 2255 deadline) to render the motion timely. He did neither.

"The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2255(f) is not jurisdictional; thus, it is subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002). For this reason, a district court may toll the AEDPA's limitations period. *Id.* at 229–30. The decision regarding whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir. 2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

---

[6] In the instant petition, however, Langston states that he did not learn of the decision until after the expiration of the limitations period.

The petitioner bears the burden of establishing that equitable tolling is warranted.  *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000), modified on reh'g, 223 F.3d 797 (2000) (per curiam). In order to satisfy his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion.  *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).  In the Fifth Circuit, "a substantial delay of several months in receiving information concerning a change in the law" can constitute an extraordinary circumstance sufficient to trigger equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Langston currently argues that the nearness of the *Whitfield* decision to his § 2255 limitations period (a mere 17 days before the deadline) should excuse him from failing to file a § 2255 motion. That argument was available to him, under the doctrine of equitable tolling, from the moment he learned of the *Whitfield* decision, yet he did not avail himself of it.  Thus, to say the least, Mr. Langston did not pursue his rights diligently.  He never filed a § 2255 motion to challenge his conviction at all.  Instead, he waited over five years, from December 11, 2009, to July 13, 2015, to seek that relief in the instant motion for a writ of error *coram nobis* – a delay, the court notes, that moved Langston's corrupt actions beyond the reach of any applicable criminal statute due to the period of limitations.  Clearly, the delay benefitted Mr. Langston by shielding him from further prosecution, and it prevented the government from prosecuting him if such a Motion to Vacate, Set Aside, or Correct Sentence had been successful.  As such, the court must deny the instant petition for a writ of error *coram nobis* under the equitable doctrine of laches.

Mr. Langston argues that laches cannot bar him from seeking *coram nobis* relief because the facts of the case fail to prove the very element of the offense that confers jurisdiction to the court – and, thus, the court lacked subject matter jurisdiction from the inception of the case (factual subject matter jurisdiction). He argues further that subject matter jurisdiction can never be waived, and a party can never be estopped from raising the issue. The rule Mr. Langston offers has an exception: a subject matter jurisdiction challenge *can* be barred by the doctrine of *res judicata*. *Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, n. 9 (1982).

The government, on the other hand, argues that, as long as an indictment, information, or plea sets forth a charge in language conforming to the applicable criminal statute, then the court is vested with subject matter jurisdiction (facial subject matter jurisdiction) – and that any facts to the contrary simply go to the merits of the case, rather than to the court's subject matter jurisdiction. The rule the government offers also has an exception: the court does *not* have jurisdiction over a criminal prosecution where the government fails to establish facts to support the *jurisdictional element* of the crime. *United States v. Scruggs*, 714 F.3d 258, 262, n. 14 (5th Cir. 2013) (citing *United States v. Sealed Juvenile 1*, 225 F.3d 507, 508-509 (5th Cir. 2000)). The government relies heavily on *Scruggs* for this proposition, but *Scruggs* is factually distinguishable from the present one. The distinguishing feature is that the element at issue in *Scruggs* (failure of the Indictment to include the word "bribe" or "kickback") was not, itself, jurisdictional, while the element of the crime at issue in the present case (a nexus connecting criminal acts to a program receiving federal funds) – is. As the element at issue in *Scruggs* did not involve subject matter jurisdiction, the failure of the Indictment,

---

[7] The following paragraphs are an outline of the court's in-depth discussion regarding jurisdiction in this case. To improve the flow of ideas, and in the interest of clarity, there are very few citations in this section; the authority for the court's decision is contained in the following sections, which go into much greater detail.

Information, or plea to include that element did not deprive the court of subject matter jurisdiction (the power to decide the case). However, the connection between the program receiving federal funds and the defendant's criminal act *is* a jurisdictional element of 18 U.S.C. § 666, and a challenge to subject matter jurisdiction on this basis is possible in most cases (but not available in the present one).

Certainly, a challenge to a non-jurisdictional element of a crime simply goes to the merits of the case; after all, in that instance, no party has challenged the court's jurisdiction. However, the argument that a challenge to the *jurisdictional element* of a crime just goes to the merits of the case is circular – as the element in question is the very one used to *prove* subject matter jurisdiction in the first place (without which, the court has no power to adjudicate). If that were the rule, then the government could establish subject matter jurisdiction in any case (by merely alleging its existence in the Indictment), and a defendant could not then defeat that bare allegation by showing proof to the contrary. This distinction matters because, if the court adopted this circular argument, then – in the case of a guilty plea – the government could, by merely alleging the existence of subject matter jurisdiction, foreclose a defendant's opportunity to challenge it in a later proceeding. This is so because a plea of guilty waives all "non-jurisdictional" defects in a conviction. If the court were to deem the "jurisdictional element" to be "non-jurisdictional" (a contradiction in terms, if there ever was one), it would be possible for a court to find a criminal defendant guilty in the total absence of the power even to consider the matter. If a criminal defendant who pled guilty could not challenge jurisdiction over the subject matter in this way, then the court cannot conceive of a scenario where such a challenge is possible.

For these reasons, the court holds that once a party challenges subject matter jurisdiction, the court's power is limited to determining whether it has jurisdiction to proceed, and the court *must* make that decision before reviewing any other aspect of the case. If the jurisdictional element is missing,

then the court must dismiss the charge *because it does not have subject matter jurisdiction to proceed.*

In that instance, the court does not have the power to adjudicate the substance of the case.

### Subject Matter Jurisdiction – Generally

Article III, Section 1 of the Constitution states that: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." In Section 2 of Article III, the Founders defined judicial power:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

> In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

The Eleventh Amendment, ratified in 1795, removes from the judicial power of the United States suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Thus, federal courts are vested with limited subject matter jurisdiction. Most state courts are courts of general jurisdiction, and a state court may presume that it has subject matter jurisdiction over any controversy before it – unless a party can show otherwise. Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3521 (3d ed.) The federal courts, however, have power to hear only those cases (1) that are within the judicial power of the United States – as set forth in the Constitution, or (2) that Congress has granted to the Courts. *Kontrick v. Ryan*, 540 U.S. 443, 454, 124 S. Ct. 906, 915, 157 L. Ed. 2d 867 (2004).

"The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998), *quoting Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 4 S. Ct. 510, 28 L. Ed. 462 (1884). Indeed, "the issue concerns the fundamental constitutional question of the allocation of judicial power between the federal and state governments." Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3521 (3d ed.), *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574-576, 124 S.Ct. 1920, 1926-1927 (2004). A federal court must presume that it does *not* have subject matter jurisdiction, and the party seeking to invoke jurisdiction must affirmatively allege facts to support it. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1277-1278, 173 L. Ed. 2d 206 (2009). The parties cannot waive subject matter jurisdiction:

> [N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the ***consent of the parties is irrelevant***, *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), ***principles of estoppel do not apply***, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17-18, 71 S.Ct. 534, 541-542, 95 L.Ed. 702 (1951), ***and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings***. Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion. "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record." *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

*Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (emphasis added). The doctrine of *res judicata* may, however, bar a party from raising subject matter jurisdiction as an issue during collateral attack on an adverse judgment. *Id*. at 702, n. 9.

In the face of a challenge to the facts supporting subject matter jurisdiction, the burden of proof falls on the party claiming jurisdiction, and the showing must be made by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 56 S.Ct. 780

(1936) (must allege facts supporting subject matter jurisdiction), *Vantage Trailers v. Beall Corp.*, 567

F.3d 745, 748 (5th Cir. 2009) (must show subject matter jurisdiction by preponderance of evidence).

Courts must examine two facets of subject matter jurisdiction: (1) whether the *allegations* are

sufficient to support a finding of subject matter jurisdiction (facial validity), and (2) whether the *facts*

supporting subject matter jurisdiction are accurate (factual validity). When faced with a factual

challenge to jurisdiction over the subject matter, the court may move beyond the allegations of the

complaint and consider relevant evidence – including affidavits and testimony. *Id.*

> Motions to dismiss for lack of subject matter jurisdiction fall into two general
> categories: facial attacks and factual attacks. A *facial* attack is a challenge to the
> sufficiency of the pleading itself. On such a motion, the court must take the material
> allegations of the petition as true and construed in the light most favorable to the
> nonmoving party. A *factual* attack, on the other hand, is not a challenge to the
> sufficiency of the pleading's allegations, but a challenge to the factual existence of
> subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to
> the factual allegations, and the court is free to weigh the evidence and satisfy itself as
> to the existence of its power to hear the case.

*Nichols v. All Points Transport Corp. of Michigan, Inc.*, 364 F. Supp. 2d 621, 627 (E.D. Mich. 2005),

*quoting United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), cert. denied, 513 U.S. 868, 115 S. Ct.

188, 130 L. Ed. 2d 121 (1994) (emphasis original; citations omitted). In addition, a court always has

jurisdiction to evaluate whether it has jurisdiction over the substance of the controversy:

> By traditional jurisdictional concepts, a court that has jurisdiction of a controversy
> because it arises under federal law has jurisdiction to determine the jurisdictional
> issue. "'Jurisdiction to determine jurisdiction' refers to the power of a court to
> determine whether it has jurisdiction over the parties to and subject matter of a suit. If
> the jurisdiction of a federal court is questioned, the court has the power, subject to a
> review, to determine the jurisdictional issue." Wright, Law of Federal Courts § 16, at
> 50 (2d ed. 1970).

*Atl. Las Olas, Inc. v. Joyner*, 466 F.2d 496, 498 (5th Cir. 1972). Thus, upon a challenge to

subject matter jurisdiction, the court has jurisdiction only to the extent of determining the issue

of subject matter jurisdiction. To hold otherwise would imbue federal courts with the power to

decide any case or controversy, whether jurisdiction existed or not.

In a criminal case, the government can initially establish subject matter jurisdiction in the indictment or information by merely tracking the language of the criminal statute. *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013). In general, a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *United States v. Williams*, 341 U.S. 58, 66 (1951). There are, however, exceptions to this rule. For example, an indictment or information fails to invoke criminal subject matter jurisdiction by "alleging violation of a *state* criminal statute." *Scruggs*, 714 F.3d at 262 , n. 14 (5th Cir. 2013) (emphasis added) (citing *United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004), *United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir. 2002)). Similarly, an indictment or information does not establish criminal subject matter jurisdiction if it "fail[s] to comply with [a] statutory jurisdictional requirement." *Scruggs*, 714 F.3d at 262, n. 14 (citing *United States v. Sealed Juvenile 1*, 225 F.3d 507, 508-509 (5th Cir. 2000). Thus, a federal court does not have subject matter jurisdiction if the government presents an indictment or information that fails to allege and, if challenged, prove the element of a crime that actually establishes federal jurisdiction. *Id*.

### Subject Matter Jurisdiction Under 18 U.S.C. § 666(a)(2)(B)

Mr. Langston argues that the court did not have jurisdiction over the subject matter of this case because there is no nexus between the agency receiving federal funds (the Hinds County Circuit Court) and his criminal conduct (conspiring to bribe Judge DeLaughter). Langston pled guilty to conspiracy (under 18 U.S.C. § 371) to commit federal government program fraud (under 18 U.S.C. § 666(a)(2)). The elements of conspiracy are: (1) that Langston and at least one other person (Richard "Dickie" Scruggs and others), (2) agreed to commit the crime of corruptly offering something of value (consideration for appointment as Federal District Judge), (3) with the intention of influencing a state public official (Judge DeLaughter), (4) as to favorable rulings in cases pending before DeLaughter, (5)

that at least one of the conspirators committed an overt act set forth in the indictment, and (6) did so in order to accomplish the objective of the conspiracy. *See* 18 U.S.C. § 371.

The underlying crime was federal programs fraud under 18 U.S.C. § 666(a)(2). The elements of this crime are: (1) an agent (Judge DeLaughter) of a local government (Hinds County Circuit Court), (2) which received Federal program benefits in excess of $10,000 for a one-year period in which the crime was committed, (3) aided and abetted by Richard "Dickie" Scruggs and others, (4) corruptly gave or agreed to give to some person, (5) funds in excess of $5,000 ($50,000 cash), (6) so that DeLaughter would be influenced and rewarded, (7) in connection with a case pending before him in Hinds County Circuit Court (*Wilson v. Scruggs*). *See* 18 U.S.C. § 666. The only element establishing federal subject matter jurisdiction is § 666(b) – the receipt by the Hinds Count Circuit Court of more than $10,000 of federal program funds during the relevant twelve month period. *United States v. Richard*, 775 F.3d 287, 293-294 (5th Cir. 2014) (subsection (b) is the jurisdictional element of 18 U.S.C. § 666), *see also Sabri v. United States*, 541 U.S. 600 (2004) (finding federal jurisdiction under 18 U.S.C. § 666 because Congress has authority under the Spending and Necessary and Proper Clauses to ensure that taxpayer dollars are spent appropriately).

### *United States v. Whitfield* as Applied Under § 666 to Judicial Bribes and Naming Mississippi's Administrative Office of the Courts as the State Agency Receiving Federal Funds

The parties do not contest the facial validity of § 666; as such, it is the *factual validity* of the § 666 charge that the court must consider in this case. Mr. Langston argues that, under the Fifth Circuit's holding in *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009), there is – as a matter of fact – no nexus connecting his criminal act (conspiring to bribe Judge DeLaughter) and the agency receiving the requisite amount of federal funds (the Hinds County Circuit Court) – and thus, that the court lacked subject matter jurisdiction over the allegations of federal program bribery under 18 U.S.C. § 666(a)(2). As discussed below, the Fifth Circuit's holding in *Whitfield* is limited to cases in

which the government alleges bribery of a circuit or chancery judge and names the Administrative Office of the Courts ("AO") as the government agency receiving federal funds in the relevant time period. The controlling authority for deciding both *Whitfield* and the present case is found in *United States v. Moeller*, 987 F.2d 1134, 1137 (5th Cir. 1993).

In *Whitfield*, Mississippi attorney Paul Minor was charged with a variety of racketeering and corruption offenses, including federal program bribery under 18 U.S.C. § 666. Only the convictions obtained against Minor under 18 U.S.C. § 666 are relevant to the instant case. As did Paul Minor, Langston has mounted a *factual challenge* to the government's claim that the court had subject matter jurisdiction to rule on his conviction for federal program bribery under 18 U.S.C. § 666(a)(2). That statute, entitled "Theft or bribery concerning programs receiving federal funds," provides in relevant part:

> (a)  Whoever, if the circumstance described in subsection (b) of this section exists—
>
>> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>>> . . .
>>> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or
>>
>> (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; shall be fined under this title, imprisoned not more than 10 years, or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a)-(b) (emphasis added).

The government's § 666 claims against Minor were based upon federal program money given to Mississippi's Administrative Office of the Courts ("AO").  The AO is a Mississippi state agency charged with "assist[ing] in the efficient administration of the *nonjudicial* business of the courts of the state."  Miss. Code Ann. § 9-21-1 (1972) (emphasis added).  The federal funds provided to the AO were associated with programs related to:  (1) improving state youth courts, (2) studying juvenile defense, (3) collecting information on cases involving aliens, and (4) installing modern display systems in courtrooms.  The government argued that the two judges under Minor's influence were "agents" of the AO, and the jury returned its guilty verdict based upon that theory.  The government's theory was, however, flawed, as the AO operated independently from the judiciary itself, and there was no "nexus" between the *criminal conduct* (the judges' taking of bribes and issuing tainted orders) and the *agency* receiving federal funds (the AO).  *United States v. Whitfield*, 590 F.3d 325, 345 (5th Cir. 2009), *citing United States v. Moeller*, 987 F.2d 1134, 1137 (5th Cir. 1993).

The requirement of such a nexus cannot be found in the text of § 666; however, under *Moeller*, the nexus must exist to establish jurisdiction over the subject matter of the case.  *Moeller*, 987 F.2d at 1137.  The Fifth Circuit held that, "for purposes of jurisdiction" that, "[t]aking the words of [§ 666] at face value it is apparent that for purposes of the conduct proscribed by section 666(a)(1) the defendant must be an agent of the agency receiving federal benefits in excess of $10,000."  *Id.*  However, to invoke federal subject matter jurisdiction, "there must be some nexus between the criminal conduct and the agency receiving federal assistance."  *Id.*  Congress established subject matter jurisdiction in § 666 cases by linking it to the disbursement of federal funds to state agencies:  "*Congress* has cast a broad net to encompass local officials who may administer federal funds . . . ."  *United States v. Westmoreland*, 841 F.2d 572 (5th Cir. 1988), *cert. denied*, 488 U.S. 820, 109 S.Ct. 62 (1991).  Indeed, the jurisdictional net is broad enough that, for the court to entertain a charge under § 666, the particular program involved in the theft or bribery need not be the recipient of federal funds.

*Moeller*, 987 F.2d at 1137, *citing United States v. Little*, 889 F.2d 1367, 1369 (5th Cir. 1989).  Thus, to establish initially that a federal court may exercise subject matter jurisdiction over a § 666 case, the government must *allege* facts sufficient to show such a nexus between the criminal conduct and the agency.  *Id.*  In a case where a defendant challenges subject matter jurisdiction, the government must present *proof*, by a preponderance of the evidence, to support the claim of jurisdiction, including the nexus between the funds provide to the state agency and the defendant's criminal conduct.  *Vantage Trailers v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

The government could not do so in *Whitfield*, as the acts of the judges under Minor's influence (unusually favorable rulings in cases and findings in settlement conferences) were *judicial* in nature, while the AO itself dealt only with *non-judicial* matters (provision of supplies, support personnel, etc.) *Whitfield*, 590 F.3d at 346, Miss. Code Ann. § 9-21-1 (1972).  Thus, even if the court were to find that the judges were agents of the AO, their role with the AO "had nothing to do with their capacity as judicial decisionmakers," and, as such, had no "connection with any business, transaction, or series of transactions" of the AO.  *Whitfield,* 590 F.3d at 346.  In the absence of such a connection – or nexus – the Fifth Circuit vacated all of the convictions based upon 18 U.S.C. § 666.  *Id.*  The Fifth Circuit's holding in *Whitfield* is, however, limited to the relationship between the bribery of state court judges – and the AO.  The Fifth Circuit did not determine whether a nexus exists between the bribery of state court judges and any other state agency.  As the government in the present case has alleged that the Hinds Count Circuit Court (not the AO) is the recipient of more than $10,000 in federal funds over a relevant twelve-month period, *Whitfield* has no application here.

### Jurisdiction in the Instant Case

The requirement of 18 U.S.C. § 666(b) that the government agency in question receive more than $10,000 in federal funds over a period of twelve months is the element establishing federal jurisdiction for a federal program bribery charge.  *United States v. Richard*, 775 F.3d 287, 293 (5th Cir.

2014). Even if the government *alleges* facts supporting jurisdiction in the indictment, a defendant may nonetheless challenge jurisdiction at any time during trial or appeal of the criminal case. *See Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982). Indeed, if it appears that federal jurisdiction is absent, the trial court or appellate court *must* examine the issue of subject matter jurisdiction, even if the parties do not. *Ireland*, 456 U.S. at 702.

The Fifth Circuit thoroughly discussed the requirements to establish federal jurisdiction over § 666 federal program bribery cases in *Richard, supra.* The defendant, Richard (a School Board member), was convicted by a jury of conspiracy to commit bribery under 18 U.S.C. § 371 and two counts of bribery under 18 U.S.C. § 666. *Id.* at 291. He and another School Board member participated in a scheme to solicit a bribe from an applicant for the position of School Board Superintendent. *Id.* On direct appeal, Richard did not contest his involvement in the bribery scheme. *Id.* at 294. Instead, he argued that the District Court did not have jurisdiction to hear the case because there was no nexus between his corrupt actions as a School Board member (bribery involving another School Board member) and the state agency actually receiving more than $10,000 in federal funds during the relevant year (the School District, rather than the School Board) . *Id.*

The Fifth Circuit held that "[t]o establish federal criminal jurisdiction over this admitted bribe, the government is required to establish that the School Board received more than $10,000 of federal benefits in a one-year period." *Richard*, 775 F.3d at 293. The Fifth Circuit acknowledged that Richard's claim regarding the absence of a nexus was a challenge to "§ 666's jurisdictional element." *Id.* Richard did not "contest the factual accuracy of [the evidence]. Instead, he argue[d] that the School Board [the smaller agency of which he was a member] [was] distinct from the School District [the larger agency receiving federal funds], and thus that the government ha[d] not proven that the Board received $10,000 in federal funds." *Id.* at 294. Put another way, Richard argued that, though there was clearly a nexus between his corrupt actions (bribing a School Board official) and the sub-

agency for which he worked (the School Board itself), there was no nexus between his corrupt actions and the School District (the larger agency directly receiving federal funds). The Fifth Circuit examined the evidence regarding jurisdiction and determined that, according to testimony given at trial, that "for the purposes of distributing federal education grant money, school boards and school districts are synonymous" – and that "[t]he jury could reasonably have relied on this testimony in determining that the jurisdictional element was met." *Id*.

Mr. Langston, as did Mr. Richard, argues that the government did not establish a nexus between his conduct (conspiring to bribe Judge DeLaughter) and the agency receiving federal funds (Hinds County Circuit Court). Also, just as Mr. Richard, Langston admitted his corrupt actions (conspiring to bribe a state judge). Though the government cited the appropriate statute in the Information, 18 U.S.C. § 666(a)(2)(b), the document did not identify which state or local agency received over $10,000 in federal funds over the requisite twelve months – or over which twelve-month period the federal funds were dispersed. During Langston's plea hearing, however, the government identified the state government agency, the "Hinds County Circuit Court," as the one receiving in excess of $10,000 under a federal program related to the judicial brand during "any one-year period," though the government again did not specify the dates of that period. Similarly, the government did not state in the Information or at the plea hearing what nexus might exist between the Hinds County Circuit Court and the judicial decision-making of Judge DeLaughter. If Mr. Langston were currently raising a jurisdictional challenge on direct appeal to the Fifth Circuit – or a motion in this court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence – then the court involved would have to entertain it. The court would review the available facts, examine evidence, and, ultimately, determine whether the government properly invoked federal subject matter jurisdiction. The court would then determine whether the Hinds County Circuit Court actually received $10,000 in a relevant one-year period, and whether the funds Hinds County Circuit Court disperses are related to

judicial decision-making – to rule on the issue of the existence of a nexus between Mr. Langston's corrupt acts and the state agency receiving the federal funds (the Hinds County Circuit Court). *See Moeller, supra*.

Langston is not, however, pursuing a direct appeal or *habeas corpus* relief under 28 U.S.C. § 2255. Instead, he seeks a writ of error *coram nobis*, which is another form of collateral relief – the last one available to a defendant convicted of a federal crime. At first blush it would appear that a party could raise subject matter jurisdiction as an issue at any time, no matter what. After all, subject matter jurisdiction cannot be invoked by consent of the parties, conceded under the principles of estoppel, or waived by failure to raise it early in the proceedings; indeed, a court must raise the issue, *sua sponte*, if the parties fail to do so. *Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, n. 9 (1982). There is, however, one instance in which a challenge to subject matter jurisdiction is beyond a court's reach: it is foreclosed to a party who had the opportunity to litigate the question and, upon adverse judgment, seeks to reopen the issue in a collateral attack. *Id*. at n. 9. As discussed below, the court holds that this doctrine – *res judicata* – precludes Mr. Langston from raising this issue for the first time during his pursuit of a writ of error *coram nobis*. *Id.*

### *Res Judicata* **and Collateral Estoppel**

Mr. Langston's jurisdictional claims are barred by the doctrine of *res judicata,* (claim preclusion), and by the related doctrine of collateral estoppel (issue preclusion). *Res judicata* means "a thing decided;" the doctrine states that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred. *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876), *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). *Res judicata* bars a litigant from bringing a second suit (or seeking to raise an additional defense) based upon the same event or series of events by asserting additional facts or proceeding under a

different legal theory; the doctrine prevents "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *see also Goldberg v. R. J. Longo Constr. Co.*, 54 F.3d 243, 246 (5th Cir. 1995) (*res judicata* bars claims that were or could have been raised in prior actions). In the Fifth Circuit *res judicata* bars a claim if: (1) the parties are the same in both actions, (2) the prior judgment is rendered by a court of competent jurisdiction, (3) the prior judgment was final on the merits; and (4) the cases involve the same cause of action. *Travelers Ins. Co. v. St. Jude Hospital of Kenner*, 37 F.3d 193, 195 (5th Cir. 1994). Two cases involve the same cause of action if both cases arise out of the same nucleus of operative facts. *Id.* Collateral estoppel, or issue preclusion, on the other hand, precludes relitigation of issues actually adjudicated, and essential to the judgment, in prior litigation involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).

Mr. Langston pled guilty to the crime of conspiracy to commit federal program bribery under 18 U.S.C. §§ 371 and 666(a)(2). In doing so, he acquiesced to this court's jurisdiction over the subject matter of this case – and thus the power to adjudicate the matter. The court accepted Langston's plea, entered a judgment of guilty, and imposed a sentence. As set forth above, the indictment in this case tracked the language of the applicable statutes; thus it stated a *prima facie* case to establish jurisdiction – which Langston failed to challenge until filing the instant petition for writ of *coram nobis*. Mr. Langston could have raised want of subject matter jurisdiction as a defense at several points long before he filed the instant petition. He could have done so during plea negotiations with the government. He could have done so during his plea hearing before the court – or any time between. He could have prosecuted a direct appeal

challenging jurisdiction. He could have sought *habeas corpus* relief under 28 U.S.C. § 2255, which specifically provides for a jurisdictional challenge:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, *or that the court was without jurisdiction to impose such sentence*, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added).

He did none of these things. The Fifth Circuit Court of Appeals issued the *Whitfield* decision less than three weeks before Langston's deadline for § 2255 relief expired, but, as *Whitfield* has no bearing on this case, its proximity to Langston's § 2255 deadline is irrelevant. Upon careful reading, it becomes clear that *Moeller* was the controlling precedent to the court's ruling in this case, and the *Moeller* decision was issued in 1993, some 15 years before *Whitfield*. Thus, the requirement for a nexus between the criminal conduct of the defendant and the agency was established in *Moeller* – long before *Whitfield* – and long before Langston's guilty plea. The Fifth Circuit's ruling in *Whitfield* was merely the application of *Moeller* to the facts of that case: that Mississippi Circuit and Chancery Court judges are not agents of the Mississippi Administrative Office of the Courts ("AO"), and, as such, there is no jurisdictional nexus between the actions of the defendants (bribing judges) and the agency receiving funds (the AO). In the present case, the government has alleged that the agency receiving federal funds was the Hinds County Circuit Court, not the AO; as such, *Whitfield* has no application to the present case. The cases are factually distinguishable.

Langston could also have challenged whether the Hinds County Circuit Court received the requisite $10,000 in federal funds. The court can find only the government's assertion that it could prove that fact during Langston's plea hearing. Though federal funds are dispersed widely

to state agencies throughout the country, there is no evidence of record definitively showing that the Hinds County Circuit Court received the funds – and did so in the prescribed time period. There is simply no proof either way. Mr. Langston conceded this fact during his plea hearing. In pleading guilty, Langston acquiesced to all aspects of subject matter jurisdiction. Put simply, the applicable law and relevant facts for Langston to challenge jurisdiction were available to him throughout his criminal proceedings through direct appeal. He failed to raise the issue.

The doctrine of *res judicata* bars Langston from relitigating, through a collateral attack, any claims arising out of his criminal prosecution, and any claims arising out of those events as to any party involved in his criminal prosecution (Langston and the United States). Therefore, under the doctrine of claim preclusion, all of Langston's claims in the instant petition will be dismissed with prejudice. Further, under the doctrine of issue preclusion, Langston's claims regarding his criminal prosecution must be dismissed, as a valid judgment was entered against him regarding these issues. Therefore, Mr. Langston may not assert want of subject matter jurisdiction to overcome the court's application of laches to bar his claim for relief through a writ of error *coram nobis*.

## Conclusion

The elements of *coram nobis* relief are: (1) that the ground for relief involves a fundamental error, (2) that no other judicial remedy is available, (3) that valid reasons exist to excuse the petitioner's failure to seek relief on these issues in earlier proceedings, and (4) that the petitioner is suffering or threatened with adverse collateral consequences as a result of his conviction. Mr. Langston has established the second and fourth elements; however, he has failed to prove the first and third.

Langston's assertion that the court lacked subject matter jurisdiction fails under the doctrine of laches, as he had seven years to assert it (in the trial court, Court of Appeals, or through *habeas corpus*

relief under 28 U.S.C. § 2255), but waited until the statute of limitations ran on any other charges that could have arisen out of his corrupt actions. In addition, he has not shown any reason whatsoever (other than avoiding further prosecution) for such a lengthy delay. Further, *res judicata* bars his challenge to jurisdiction because he acquiesced in the judgment by pleading guilty – then forewent both a direct appeal and *habeas corpus* relief. As such, he has not met the elements for receiving *coram nobis* relief, and the instant petition will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of February, 2016.

 /s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI